Ruffin, C. J.
 

 We think the object of these parties cannot bo legally effected, as it seems to us, that a testamentary guardian cannot be displaced in this manner. It peed not be questioned, that the domicil of an infant may generally be changed by the removal of the mother to another State and carrying the infant with her ; and that, jn such a ease, the act of 1820, Rev, Stat. Ch. 54 Sec, 23 requires an executor, or guardian, appointed by a Court in this State, and having the estate in possession, to account with a guardian appointed in the State of the infant’s residence. But we think a testamentary guardian is not within the purview and meaning of the act. It is true, that the terms of the act are broad enough to cover the case, as it speaks of guardians generally, and there is no express exception therein of testamentary guardians. But it would seem, that the exception must be implied from the power conferred by the law on a father " to dispose
 
 *63
 
 of the custody' and tuition” of his infant child and the management of the estate. After giving such a power, and when the father of a child, residing here, appoints a guardian and thereby confers on him the custody and tuition of the child here — expressly directing in this case, indeed, that the child shall be reared and educated in this State by the testamentary guardian — it seems impossible to suppose the law could mean to allow any person whatever to change the custody, tuition, or domicil of the child, unless in the single case, where the guardian was wasting the estate, or otherwise demeaning himself improperl}'. Suppose the father to direct particular investments in stocks, or loans, or lands in this State. It cannot be imagined, that the legislature intended to interfere with those special provisions and trusts, by allowing them to be defeated by any one who could manage to' get the child into another State, and procure a guardian to be appointed there for him. It is plain, that it was the very object of this father to prohibit the removal of his children from this State on any pretence ; and the probability, from the circumstances, is, that his objection was directed against their present domicil in the particular. He thought there was more in what he deemed the proper nurture and tuition of his children, in the proper place, and under a fit person, than in the rapid accumulation of their property during the short period of their infancy. Indeed, such are always the views of a father, who appoints a guardian for his children, instead of leaving the selection to the Courts from time to time. It seems to us, that the act in question did not mean, in the least, to impair that privilege of a father — especially through the agency of the courts of another State, acting upon infants improperly carried within their jurisdiction, in opposition to the will and lawful directions of the father. This, we have said, should be implied from the nature of tho ease, notwithstanding the general term,(i guardian,” used in
 
 *64
 
 the act. But that implication is so fortified by other pro* ■visions in the act, as to become almost a necessary one. For example, the, 5th section authorises the Superior or County Courts to appoint a guardian to take charge of the estate of an infant, whose father is alive, and resident here. But clearly, in such a case, a guardian appointed abroad would not supersede the one appointed here. There must, then, be some limitation on the sense, in which the term,
 
 “
 
 guardian,” must be received in the act; and, as we conceive, this case of a guardian appointed by the father furnishes another instance of it. The act says, a guardian of an orphan “ regularly appointed in the State where heresides” may call an executor or guardian here to account. But whom can our law deem guardian “regularly appointed” in such a case? Surely those were not intended, who could not, according to our law, be appointed by our own Courts. Now, the statute confers the power upon our Courts “ to appoint guardians, where hone have been appointed by the father," and in that case only, unless in the case of an unfaithful guardian, according to the 18th section. If, in this case, our Courts were to appoint a guardian for the children, the appointment would be without authority or validity ; and it seems contrary to every sound principle of construction, to allow a general term in a statute so to operate, as to make the legislature confer on a foreign jurisdiction an authority, which is expressly denied to our own tribunals by the same statute, and which cannot be exercised by either tribunal, without impugning powers expressly conferred thereby on the father and his nominee exclusively. In such a case the orphan cannot be rightfully taken from the guardian here and carried abroad ; and therefore our law cannot deem one, there appointed, to be a lawfully and regularly appointed guardian.
 

 Per Curiam.
 

 Bill dismissed.